## MORTENSEN *v.* BRADSHAW.

1. APPEAL AND ERROR—ARGUMENT OF COUNSEL—SAVING QUESTIONS FOR REVIEW.

    Where defendant's counsel failed to invoke action of the court, after excepting to opposing counsel's remark charging him, without warrant, with pettifogging, he is without remedy, on appeal.

2. TRIAL — ARGUMENT OF COUNSEL — PREJUDICIAL ARGUMENT — ASSAULT WITH INTENT TO RAPE.

    In an action for assault with intent to commit rape, it was error for plaintiff's counsel, in his closing argument, in response to remarks of defendant's counsel that plaintiff, who had previously been seduced by another man, had already received the greatest injury any woman could suffer, and had settled for $400, to reply that neither the jurors nor any parent would feel that their daughter was less entitled to damages by reason of being overpersuaded by a young man to whom she was engaged, and that the position taken by counsel for defendant was unjust and. contrary to the natural feeling of parent and child.

3. SAME—ARGUMENT OF COUNSEL—WEALTH OF DEFENDANT—DAMAGES—ASSAULT WITH INTENT TO RAPE.

    In an action for assault with intent to commit rape, it was

improper for plaintiff's counsel, in argument, while discussing the question of damages, to refer in detail to the possessions of defendant.

4. SAME—ASSAULT WITH INTENT TO RAPE—DAMAGES—REPUTATION —INSTRUCTIONS.

Where there was no evidence showing loss of reputation and standing in the community as a result of the alleged assault, it was erroneous for the trial judge to permit the jury to award damages therefor.

Error to Ottawa; Cross, J. Submitted June 18, 1915. (Docket No. 64.) Decided September 29, 1915.

Case by Rose Mortensen against Hugh Bradshaw for assault with intent to commit rape. Judgment for plaintiff. Defendant brings error. Reversed.

*Visscher & Robinson* (*Smedley & Linsey,* of counsel), for appellant.

*Diekema, Kollen & Ten Cate,* for appellee.

In this action plaintiff sued to recover damages for several alleged assaults with intent to commit rape. The declaration consists of four counts. The first charges a simple assault on the 1st day of June 1914; the second, an assault with intent to commit rape upon the same day; the third, an assault with intent to commit rape on the 28th day of June; and the fourth, an assault with intent to commit rape on the 4th day of July. The offense in each count is charged under a videlicet.

The plaintiff at the time of the trial was an unmarried woman about 24 years of age. On November 16, 1913, she had given birth to an illegitimate child. After the birth of said child she commenced an action against the alleged father, causing his arrest, which she afterwards settled for the sum of $400. In April, 1914, her child then being about 5 months old, she secured a position as housekeeper for the defendant,

who had been divorced from his wife and was at that time 75 years of age. Plaintiff testified that, within two weeks of her entry upon service with the defendant, he began to importune her to marry him. She further testified that she declined his proposals, assigning as a reason for her refusal the disparity in their ages. It is her claim that, following her refusal, he attempted, by the use of force, to carnally know her, but that she succeeded in eluding his embraces. Following this incident, plaintiff claims that defendant expressed regret for the occurrence, and promised that it should not happen again. However, he insisted they should be married, and urged her to enter into an engagement with him. This she finally consented to do. As a result of such agreement an antenuptial contract was prepared and executed by them. That contract follows:

"An agreement made by and between Hugh Bradshaw, party of the first part, and Rose Catherine Mortensen, party of the second part: Whereas, it is the intention of the said first party and the said second party to mutually intermarry; and whereas, Hugh Bradshaw has children by a previous marriage for whom he wishes to provide, as well as for the second party: Now, therefore, it is mutually agreed by and between the parties as follows: Said first party agrees to adopt Leroy, the child of the said Rose Catherine Mortensen, and the said second party agrees that the said Hugh Bradshaw shall so adopt the said child, and the said child shall be his child as well as her own, and that his name shall be Leroy Hugh Bradshaw. It is further agreed that, in consideration of the said marriage, the said Hugh Bradshaw will, after the marriage of the parties, convey a life interest in the whole of the first party's homestead property on Macatawa road, in Ottawa county, Michigan, with the remainder vested in the said child and in any children born as issue of the said marriage in case there be any such issue, equally; otherwise, in the said child alone. He further agrees that he will, after the said marriage,

will to the said second party one-third interest in all the remainder of his property absolutely, with the exception of his house and lot in Holland, Michigan, on the northeast corner of Twelfth and Central avenue, no part or share of which shall be willed to said second party, but which is to go to Hettie Bradshaw Fergus, his daughter. Said second party agrees, in consideration of the marriage and the agreements of the said first party as hereinbefore stated, that she, the said second party, will accept as much property as is hereinbefore stated by the said first party as her future share of the estate of the said first party in the event of or at the time of his death, and that she waives all right of dower and homestead, or any rights whatever as his widow, except as hereinbefore stated. And she further agrees that she will quitclaim her interest in the property on the northeast corner of Central avenue and Twelfth street in the city of Holland to the said Hettie Bradshaw Fergus, at such time and whenever the first party may desire. Second party further agrees that she will not incumber or transfer any of the property herein mentioned now or later. The said parties mutually agree that in the event of a separation this agreement shall be null and void.

"June 16, 1914.

[Signed] "HUGH BRADSHAW,
"ROSE CATHERINE MORTENSEN."

It will be noted that the date of the contract, June 16, 1914, is about two weeks later than the first of the assaults charged in the declaration. Plaintiff continued to live with defendant up to the 4th of July, some two or three weeks later. She testified that during this period she considered the defendant engaged to her, but that she was not engaged to him, and had no intention of marrying him. She further testified:

"I didn't consider myself engaged to him at that time, or any time. I just let him sign this paper, and let him go on with this just to fool the old man, because he had told me that he couldn't marry before October anyway, and we thought by that time that he would forget it and it would be entirely over."

Defendant, who was called by the plaintiff under the statute, denied the several assaults charged by the plaintiff, but claimed to have had sexual intercourse with her on three occasions with her consent, and averred his willingness to marry her.

Upon the measure of damages the court charged the jury as follows:

"The offense charged in the declaration in this case is not a simple assault and battery, such as striking the plaintiff with the hand or fist, but an aggravated assault and battery, consisting of the taking of indecent liberties with the person of the plaintiff, and attempting to ravish and carnally know her; and if you find that the defendant is guilty of this sort of an offense, then, in determining the damages to which she is entitled to compensate her, you should take into consideration not only her physical injury and suffering, if any, but also the injury to her feelings, and any disgrace or humiliation or injury to her name or reputation, if any. I charge you that, if you find for the plaintiff, in reaching the amount of your verdict you may consider the nervous shock sustained by the plaintiff, if any, by reason of the acts of the defendant, her anxiety, physical pain and suffering, injury to feelings, disgrace, and loss of reputation, if any. These elements of damages are not in the nature of things susceptible of exact computation, but the jury must determine the amount as their best, candid, and careful judgment shall dictate."

Plaintiff recovered a verdict of $5,000.

BROOKE, C. J. (*after stating the facts*). There are some 46 assignments of error, only a few of which it will be necessary to consider. There are several assignments based upon alleged erroneous rulings with reference to the admission of testimony. We find no reversible error here.

During the cross-examination of the plaintiff by defendant's counsel, plaintiff's counsel, in the presence of the jury, charged defendant's counsel with pettifog-

ging. An exception was taken to the statement by defendant's counsel, but no action of the court was invoked upon the matter. We are of opinion that the language of plaintiff's counsel was unwarranted, and, had the trial court been appealed to, a timely instruction to the jury would doubtless have rendered the remark harmless. Defendant's counsel, having failed to invoke such action on the part of the court at the time of the occurrence, is now without remedy.

During the argument to the jury the following occurred:

"In their argument, counsel for defendant argued to the effect that plaintiff could not recover damages in any substantial amount, because she had already received the greatest injury that any woman could suffer, and had settled this for $400. Mr. Diekema, in his closing argument for the plaintiff, insisted that neither the jurors nor any parent would feel that their daughter was less entitled to damages by reason of having been overpersuaded by a young man to whom she was engaged, and that the position taken by counsel for the defendant was entirely unjust and contrary to the natural feeling of parent and child. The following then occurred:

"*Mr. Visscher:* I except to that statement.

"*The Court:* Think you had better leave that out. They should try this case according to the testimony received here.

"*Mr. Visscher:* The question is not how their daughter would feel about it.

"*Mr. Diekema:* Do you expect to eliminate the heart of men and paternal feelings in a case of this kind?

"*The Court:* No.

"*Mr. Visscher:* We except to Mr. Diekema's remark.

"Later on, in the course of the same argument, Mr. Diekema, while discussing the question of damages, reviewed the testimony in detail relating to the possessions of the defendant, whereupon the following occurred:

"*Mr. Visscher:* I object to that; the remarks about Mr. Bradshaw being a rich man. Take an exception to it.

"*The Court:* It is in the testimony; I suppose he has a right to argue from it."

We are of opinion that the argument of counsel for plaintiff constitutes reversible error under several late decisions of this court. Juries are not to be invited to assess damages upon the basis of the amount they would be willing to accept as compensation for the wrongs alleged to have been suffered. The case was one in which an appeal to the passions and prejudices of the jury was likely to produce unfortunate results. Upon this point see *Hughes* v. *City of Detroit*, 161 Mich. 283 (126 N. W. 214, 137 Am. St. Rep. 504); *Morrison* v. *Carpenter*, 179 Mich. 207 (146 N. W. 106), and *Wells* v. *Railroad Co.*, 184 Mich. 1 (150 N. W. 340).

We are likewise of opinion that the argument of counsel relative to the alleged wealth of defendant was an improper one to make in the case, where the charge is one of assault with intent to commit rape. *Johnson* v. *Railway Co.*, 135 Mich. 353 (97 N. W. 760); *Holmes* v. *Loud*, 149 Mich. 410 (112 N. W. 1109).

We have examined this record with care, and find no evidence warranting the trial court in permitting the jury to award damages to plaintiff on account of loss of reputation and standing in the community. *Totten* v. *Totten*, 172 Mich. 565 (138 N. W. 257).

A motion for a new trial was made based, *inter alia*, upon the ground that the verdict was excessive. As the case must go down for a new trial, because of the errors pointed out, it is unnecessary to consider the question presented by this assignment of error.

The judgment is reversed, and a new trial ordered.

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice MCALVAY took no part in this decision.