ANDERSON v HARRY'S ARMY SURPLUS, INC

Docket Nos. 53743, 53744. Submitted February 4, 1982, at Detroit.—
Decided July 12, 1982. Leave to appeal applied for.

Plaintiff, Glen E. Anderson, was severely burned when a portable
propane gas heater ignited a tent in which he was sleeping.
The heater was manufactured by Primus Corporation. The
heater was purchased from defendant Harry's Army Surplus,
Inc., and was powered by a disposable propane gas cylinder,
also purchased from Harry's, manufactured by defendant The
Coleman Company, Inc. Following a jury trial in the Wayne
Circuit Court, Roland L. Olzark, J., the jury found that defen-
dants Harry's and Coleman were negligent and that their
negligence was the proximate cause of plaintiff's injuries. Plain-
tiff's damages were found to be $1,200,000 and plaintiff was
found not to be contributorily negligent. Defendants Harry's
and Coleman appeal from that judgment and from an order by
Judge Olzark denying their motion for a new trial. Defendants
allege numerous errors on appeal. *Held:*

1. The defendants are entitled to a new trial since the trial
court erred in excluding evidence of the use of alcohol and
marijuana by plaintiff and his companions on the camping trip.
The court abused its discretion under the circumstances of this
case. The probative value of the evidence outweighed its preju-
dicial effect. Defendants' position was seriously prejudiced by
the exclusion of the evidence.

2. The trial court did not err by failing to instruct the jury to
apportion fault between the defendants and Primus, a nonparty
alleged joint tortfeasor. The doctrine of joint and several liabil-

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 602.
[2] 29 Am Jur 2d, Evidence §§ 249, 251-253.
[3] 5 Am Jur 2d, Appeal and Review § 881.
[4] [No reference]
[5] Am Jur 2d New Topic Service, Comparative Negligence § 42.
[6] 5 Am Jur 2d, Appeal and Error § 554.
[7] 5 Am Jur 2d, Appeal and Error § 624.
[8] 5 Am Jur 2d, Appeal and Error § 553.
[9] 5 Am Jur 2d, Appeal and Error §§ 553, 623.

ity among codefendants has not been abolished by the adoption of comparative negligence in Michigan. Since it may not be possible to recover from the absent tortfeasor it would not be preferable or equitable to penalize the plaintiff by reducing the amount of his damages to correspond to the defendants' proportionate degree of negligence.

3. The trial court did not, as defendants contend, bar the defendants from attempting to prove that Primus was the sole proximate cause of plaintiff's injury. Defense counsel's failure to raise or advance such an argument until the motion for a new trial was merely an error in strategy. The trial court merely precluded the plaintiff from barring reference to the absence of Primus from the litigation and precluded the jury from apportioning fault among the defendants and Primus.

4. Plaintiff's counsel's improper invitation to the jury to assess damages upon the basis of the amount they would be willing to accept for the wrongs alleged to have been suffered and improper attempt to relate his own perceptions of the damages sustained by the plaintiff outside of the evidence on the record do not rise to a level considered to evidence a studied purpose to inflame or prejudice the jury, therefore, reversal is not required on this ground.

5. Defendants may not object on appeal to the admissibility of an experiment conducted by plaintiff's counsel at trial since no objection was made to the admissibility of the experiment at the trial. The claimed error was, therefore, not preserved for appeal.

6. Defendants' failure to object at trial to allegedly improper jury instructions precludes appellate review of such instructions since there is no manifest injustice disclosed.

Reversed and remanded.

1. APPEAL — EVIDENCE — TENTATIVE EXCLUSION OF EVIDENCE — PRESERVING QUESTION.

An objection to a trial court's tentative refusal to admit evidence is not preserved for appeal where the objecting party fails to again raise the issue at the trial.

2. EVIDENCE — RULES OF EVIDENCE.

Relevant evidence will generally be admitted in a trial if its probative value substantially outweighs any prejudicial effect (MRE 403).

3. EVIDENCE — APPEAL.

The admissibility of evidence rests within a trial judge's discre-

tion and his determination will not be set aside unless there has been an abuse of discretion.

4. EVIDENCE — APPEAL — RULES OF EVIDENCE.

The substance of the evidence must have been made known to a trial court in order to predicate error on the trial court's ruling excluding evidence (MRE 103[a][2]).

5. NEGLIGENCE — COMPARATIVE NEGLIGENCE — JOINT AND SEVERAL LIABILITY.

The doctrine of comparative negligence does not require an abandonment of joint and several liability which arises when the negligence of two or more parties concur in a single, indivisible injury, even though there was no common duty, common design or concerted action.

6. MOTIONS AND ORDERS — MISTRIAL — APPEAL.

Decisions on motions for mistrials are within a trial court's sound discretion and will not be reversed on appeal absent a finding of an abuse of discretion resulting in a miscarriage of justice.

7. APPEAL — REMARKS OF COUNSEL — JURY TRIALS.

The Court of Appeals will reverse a jury verdict because of allegedly prejudicial remarks of counsel at trial only where the remarks complained of evidence a studied purpose to inflame or prejudice the jury.

8. APPEAL — EVIDENCE — PRESERVING QUESTION.

A claimed erroneous admission of evidence at trial is not preserved for appeal where no objection was made to the admission of the evidence at the trial absent a finding of manifest injustice.

9. TRIAL — JURY INSTRUCTIONS — APPEAL — PRESERVING QUESTION.

Failure to object at trial to a jury instruction ordinarily precludes appellate review of the jury instructions absent manifest injustice.

*Goldstein, Meklir, Schreier, Nolish & Friedman, P.C.,* for plaintiff.

*Dickinson, Wright, McKean, Cudlip & Moon* (by *H. G. Sparrow, III),* for defendant Harry's Army Surplus, Inc.

*Miller, Canfield, Paddock & Stone* (by *Larry J.*

*Saylor* and *Wolfgang Hoppe (Allen & Allen,* of counsel), for defendant The Coleman Company, Inc.

Before: N. J. KAUFMAN, P.J., and V. J. BRENNAN and CYNAR, JJ.

CYNAR, J. Following a jury trial in Wayne County Circuit Court, the jury found that defendants Harry's Army Surplus, Inc. (hereinafter Harry's), and The Coleman Company, Inc. (hereinafter Coleman), were negligent and that their negligence was the proximate cause of injuries sustained by plaintiff. Plaintiff's damages were found to be $1,200,000 and plaintiff was found not to be contributorily negligent. Defendants appeal as of right.

On November 13, 1975, plaintiff, then 18 years of age, and his companions, Larry Yerman and Michael Evinauf, visited defendant Harry's to purchase equipment for a camping trip. Plaintiff testified that when the three of them asked for a heater suitable for use in a tent, an employee of Harry's recommended a portable propane gas heater manufactured by Primus Corporation (hereinafter Primus), and a disposable propane gas cylinder manufactured by Coleman. Plaintiff and his companions purchased the heater and cylinder, and then drove from Southfield to a campsite in the Traverse City area.

Upon arriving at the campsite at 7 or 8 p.m., plaintiff and Evinauf pitched their tent by the light of the car's headlights. Yerman attached the Primus heater to the Coleman propane cylinder, ignited the heater and placed it in the tent before the three men went to sleep. Plaintiff testified that the heater was sitting on the tent floor, and that he was sleeping closest to it. During the night, the

tent was ignited by the heater, and plaintiff was severely burned. Plaintiff recalls nothing of the fire or the events immediately following it. Plaintiff awoke briefly sometime after the fire and saw that he had been burned. He next recalls being in a hospital. Neither Yerman nor Evinauf appeared or testified at trial, in spite of the fact that they had been subpoenaed by the defense.

The fire was investigated on the afternoon of November 14, 1975, by a state patrolman, Sergeant Roger DeVolder, and by a state fire marshal, Sergeant Frederick Willie. The transcript of Sgt. Willie's deposition and that of Sgt. DeVolder were read into the record. Portions of the depositions referring to the presence of beer bottles at the campsite, and statements by Yerman and Evinauf to Sgt. DeVolder regarding the use of alcohol and marijuana prior to the fire, were omitted.

On appeal, defendant Harry's has adopted the brief of defendant Coleman.

I

Defendants argue that the trial court erred reversibly in excluding evidence of the use of alcohol and marijuana by plaintiff and/or his companions.

In order to evaluate the merits of defendants' legal claim, the scope of the trial court's ruling must be clarified. At the beginning of trial, plaintiff's counsel moved to exclude evidence of "any drinking or use of marijuana by the plaintiff, Glen Anderson, in this particular matter". Following a lengthy trialogue between counsel for the parties and the court, plaintiff's counsel stated that it was their contention that there "is no showing and will be no showing that any drinking or use of marijuana, if any, by the plaintiff, Glen Anderson, was

in any way a contributing cause or a proximate cause of the incident involved".

Plaintiff's companions had made statements to Sgt. DeVolder to the effect that prior to the fire they had been drinking alcohol and smoking marijuana and that their memory of the fire and the events preceding it "was very clouded by it". Sgt. Willie had observed that there were "a lot of empty beer bottles" around the campsite. Plaintiff's counsel indicated that the hearsay statements by plaintiff's companions would be inadmissible and indicated that the only person to testify regarding plaintiff's use of intoxicants would be the plaintiff himself, and that the plaintiff would testify that he only had one or two beers, and two puffs on a marijuana cigarette, and that his companions had also only consumed no more than one or two beers and that "nobody was intoxicated".

Following this discussion, the trial court ruled:

"Well, I just see some problems without serious reflection; I see some problems with your position.

"Now, maybe it will be made clear to me as we go along as to my view. But we have still got the initial problem here.

"I'm going to make the ruling that you can't refer to it, but—

\* \* \*

"But I'm going to say this: It is not written in stone. If something during this trial occurs that convinces me otherwise, prior to the time the plaintiff takes the stand, or even after, and I felt that justice would require it, I will reopen the proofs on it.

"But with what I've got here right now, it seems to me its prejudicial effect would outweigh its probative value. And I am accepting the facts as each party has stated they would occur."

It has been held that where a trial court's refusal to admit evidence is "tentative", counsel's failure to again raise the issue precludes assignment of error to the ruling on appeal. *Pennsylvania Fire Ins Co v Ann Arbor R Co,* 184 Mich 375; 151 NW 578 (1915); *Adair v Phoenix Mutual Life Ins Co,* 31 Mich App 38; 187 NW2d 246 (1971). However, at the close of plaintiff's proof, defense counsel, Mr. Allen, engaged in the following discussion:

> *"Mr. Allen:* I'll read the deposition that I borrowed and read a—I'll want to make a reference on the record as in DeVolder's deposition in finding the beer and beer bottles, and you entered an order barring me from going into it, and I want to make certain that I protected my record on that.
>
> "If counsel will stipulate that I can make an offer of proof outside the record by those things, it will eliminate the necessity of going ahead without—
>
> *"Mr. Schreier [plaintiff's counsel]:* I have no problem. There are certain things that we did not read in DeVolder's deposition pursuant to the court granting our motion *in limine,* and I will say it is contained in the deposition and he is offering it.
>
> *"The Court:* Well, what about that information?
>
> *"Mr. Allen:* The marijuana, the doctor's reference in questions asked about that. Sergeant Willie, reference was asked in that deposition about that and it was stricken. Testimony like seeing beer bottles at the scene, that kind of stuff was stricken.
>
> *"The Court:* All right. Then the record can reflect that that was stricken. I have no fault with that."

Defendants' offer of proof apparently included evidence indicating use of intoxicants by both plaintiff and his companions. Assuming the trial court's response to such offer indicated that it was not inclined to change its earlier ruling, the issue has been preserved for appeal, and the trial court's decision must be reviewed.

Relevant evidence will generally be admitted if the probative value substantially outweighs any prejudicial effect. MRE 403; *People v Oliphant,* 399 Mich 472, 489-490; 250 NW2d 443 (1976). Admissibility rests within the trial judge's discretion, and his determination will not be set aside unless there has been an abuse of discretion. *Aetna Life Ins Co v Brooks,* 96 Mich App 310, 314; 292 NW2d 532 (1980), *lv den* 409 Mich 892 (1980).

In order to predicate error on a ruling excluding evidence, the substance of the evidence must have been made known to the court. MRE 103(a)(2). The last-quoted excerpt from the transcript clearly indicates that an offer of proof was made, and that plaintiff's argument to the contrary is without merit.

In the instant case, no witness was presented who actually saw the fire start. Plaintiff advanced the theory that the fire began as a result of defects in the design of the heater and fuel cannister assembly. Defendants contended that such a cause was unlikely, and sought to introduce the evidence of intoxication on the theory that such intoxication was a contributing cause of the accident in one of several possible ways: (1) that Yerman's intoxicated state was a factor in his possible improper assembly of the heater to the fuel cannister, (2) that one of the campers, perhaps plaintiff himself, knocked the heater over, (3) that plaintiff was so intoxicated that he was unable to protect himself or escape from the tent once the fire started, or (4) plaintiff's companions were so intoxicated that it constituted negligence on the part of plaintiff to trust them to carefully set up the heater in the tent where plaintiff slept.

Regardless of the scope of the trial court's ruling, we think that under the circumstances of this

case it was an abuse of discretion for the trial court to exclude evidence of intoxication. While it may be considered prejudicial to admit such evidence, we perceive that the jury was left with a distorted view of the events surrounding the accident. Plaintiff admitted to some consumption of both alcohol and marijuana. Sgt. Willie's testimony by deposition was that there were a lot of empty beer bottles at the campsite. Even though plaintiff denied that he or his companions were intoxicated, there was some admissible evidence to the contrary, and defendants should have been allowed to present it. The probative value of the evidence was enhanced by the lack of direct evidence as to the cause of the fire. While the admission of the evidence would certainly not be adequate to conclusively prove comparative negligence, it may have made the jury less likely to conclude that a defect in the heater was the sole cause of the fire. As factfinders, and in the absence of any eyewitness, the jurors were required to speculate. Defendants' position was seriously prejudiced by the exclusion of the evidence in question.

While it is true that plaintiff's case might have been prejudiced by the admission of the evidence, a limiting instruction could have been given. We do not believe that the fact that the campers may have been drinking would inflame the passions of the jury to such an extent that they would find adversely to plaintiff simply because of that fact. The question of the consumption of marijuana is a more sensitive one, but the question in the instant case is not one regarding a determination of guilt. The question is whether a preponderance of the evidence supports plaintiff's case. Under the circumstances, it was error for the trial court to

exclude the evidence of intoxication and defendants are entitled to a new trial.

## II

Defendants claim that the trial court erred by failing to instruct the jury to apportion fault between the defendants and Primus, a nonparty alleged joint tortfeasor.

In *Weeks v Feltner,* 99 Mich App 392; 297 NW2d 678 (1980), the Court rejected the argument that the doctrine of comparative negligence, adopted in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), mandates an abandonment of the concept of joint and several liability, which arises when the negligence of two or more parties concur in a single, indivisible injury, even though there was no common duty, common design, or concerted action, and that the jury should be instructed to apportion damages between the various defendants.

Defendants urge that *Weeks* should not control the result here, as the Court's premise that the adoption of comparative negligence does not require abandonment of joint and several liability does not support the conclusion that apportionment of fault among all tortfeasors should not be permitted. However, the rationale and holding in *Weeks* has been consistently adhered to in subsequent decisions by this Court. *Johnston v Billot,* 109 Mich App 578; 311 NW2d 808 (1981); *Edwards v Joblinski,* 108 Mich App 371; 310 NW2d 385 (1981); *Friend v Campbell,* 102 Mich App 278; 301 NW2d 503 (1980), *lv den* 412 Mich 864 (1981).

In *Johnston,* the Court addressed the issue un-

der a factual setting analogous to that of the instant case. In that case the defendant, an excavation contractor, was hired by Boyle to excavate a trench on the premises of a trailer park owned by Boyle. Plaintiff's decedent was hired by Boyle to help with the project, and was killed when the trench wall collapsed. Decedent's widow subsequently received workers' compensation benefits from Boyle. Suit was then brought against the defendant only, as a third-party tortfeasor.

Prior to trial, the defendant filed a motion "to add named non-party defendant". He sought to have Boyle added to the case for the sole purpose of establishing the degree of negligence attributable to Boyle. Boyle was not made a party, nor was contribution sought. Defendant simply argued that because the law of comparative negligence applied, resolution of the case required that the jury determine the degree of negligence attributable to each of the participants in the events leading up to the decedent's death. The court ruled, over the plaintiff's objection, that the jury would be instructed to consider the degree of negligence attributable to the defendant, to the deceased and to Boyle. The jury found plaintiff's decedent to be free from negligence. It found that the degree of negligence attributable to defendant and Boyle was 50% each. Plaintiff on appeal argued that the trial court's reduction of the amount of the damages awarded to correspond to the proportionate degree of defendant's fault abolished the principle of joint and several liability.

Reviewing the *Weeks* decision, and quoting with approval from *Seattle First National Bank v Shoreline Concrete Co*, 91 Wash 2d 230; 588 P2d 1308 (1978), wherein the Washington Supreme

Court justified its refusal to abolish the doctrine, the *Johnston* Court concluded:

"In this case, the jury attributed 50% of the negligence to both defendant and Boyle, while finding decedent free from negligence. Pursuant to the workers' compensation act, Boyle's payment of compensation was the sole claim plaintiff had against him. MCL 418.131; MSA 17.237(131). Therefore, plaintiff's only source of recovery in a wrongful death action was defendant. To reduce the amount of damages to correspond to defendant's proportionate fault would penalize an innocent plaintiff by requiring the estate to bear 50% of the loss. The unfairness of such a result is a good reason why the doctrine of joint and several liability has not been abolished by the adoption of comparative negligence. The trial court's decision to reduce defendant's liability to correspond to his proportionate fault is reversed." *Johnston, supra,* 587.

The only distinguishing factor between the instant case and *Johnston,* is that here, plaintiff's cause of action against Primus was not abolished by statute. However, even where a cause of action has not been abolished, it may not be possible to recover from the absent tortfeasor because of the running of the statute of limitations, or the intervening insolvency of the absent tortfeasor. Moreover, even if the jury had been permitted to assign a percentage to Primus's fault, such a finding would not have been binding or res judicata as to Primus, who was not served and who was not a party to the action. Obviously, in a subsequent action by the plaintiff against Primus, it would be highly doubtful that another jury would find the damages in the exact amount found by the jury in the instant case, or would apportion those damages in precisely the same manner. While it may be preferable, and more equitable, to permit a jury

to apportion fault between party-defendants, the same cannot be said as to the apportionment of damages and fault between a party-defendant and a nonparty alleged joint tortfeasor.

## III

Defendants claim that the trial court improperly barred them from attempting to prove that the nonparty, Primus, was the sole proximate cause of plaintiff's injury.

There is some difficulty in determining whether the trial court actually precluded defendants from introducing evidence or making an argument that would have shown "not only that Primus was *a* proximate cause of the plaintiff's injury, but even that Primus was the *sole* proximate cause" as defendants contend, or merely precluded plaintiff from barring reference to the absence of Primus from the litigation and precluded the jury from apportioning fault among the defendants and Primus. We find the latter explanation to be correct. Plaintiff's oral motion was to "bar any reference to [Primus] not being specifically a party to the litigation". Following the motion, there was considerable discussion as to whether comparative fault would apply between the defendants, rather than joint and several liability. The trial court initially ruled that the jury would be instructed to determine the comparative degree of fault among the defendants and Primus.

After a further discussion among the trial court and counsel, the trial court changed its ruling and stated that it would not allow consideration of the negligence of Primus. This ruling was made in the

context of whether comparative negligence would apply among the defendants.

Defendants apparently did not advance the argument that Primus was the sole responsible party until the motion for new trial was made:

"*[The Court]*: Now, I don't know if anybody ever said to me but wait a minute, judge, and if they did, I would like to see it. What I really want to talk about Primus here is not—I don't want the jury to determine that they're at X degree of fault. I want them to know about Primus and determine if Primus was the proximate cause. I don't think the issue was ever framed in that fashion.

\* \* \*

"*[The Court]*: [I]f [the jury] had known about Primus, they may not have thought that Coleman and Harry's was actually the proximate cause.

"But the thing that discourages me most is the issue that was raised to the court. We were talking about percentage under the pay check receipt."

In response to defendants' counsel's protest that, once the court had ruled, counsel had to obey and could not continue arguing, the trial court stated:

"[B]ut in all fairness when you're asking the court to rule, you should tell him all the reasons, not just half of them. You do not come out—Frankly, if you come out and say I want it for two reasons, one, I want you to consider the absent tortfeasor and have this jury consider a percentage of fault under the absent tortfeasor and lay that issue to rest as to how we're going to handle the pay check; but even more than that, judge, I want to be able to talk about Primus and tell this jury that we're not the proximate cause, that Primus is the proximate cause.

"Now, did you even put that in your brief? The first time this issue of whether or not barring the talk about

Primus prevented you from talking about proximate cause was raised on the motion for new trial."

We conclude that the trial court's ruling, in context, did not bar defendants from arguing that a nonparty was the sole proximate cause, and that defendants' counsel's failure to raise or advance such an argument was merely an error in strategy, discovered to be a critical error only subsequent to trial. Even assuming that an inference that the court's ruling had precluded such an argument would have been permissible, defendants' counsel failed to point this out to the trial court and to argue for a more narrow ruling. Reversal should not, therefore, be grounded on this issue.

## IV

Defendants argue that a new trial is required because of plaintiff's counsel's repeated and improper use of the "Golden Rule" argument and because of repeated references by counsel to his own extra-judicial perceptions and conversations and other matters not properly before the jury.

Decisions on motions for mistrials are within a trial court's sound discretion, and will not be reversed on appeal absent a finding of abuse of discretion resulting in a miscarriage of justice. *Buschlen v Ford Motor Co,* 107 Mich App 340, 347; 310 NW2d 8 (1981). Only where the comments by counsel alleged to be prejudicial evidence a studied purpose to inflame or prejudice a jury will this Court reverse the jury's ultimate verdict. *Kern v St Luke's Hospital Ass'n of Saginaw,* 404 Mich 339, 353-354; 273 NW2d 75 (1978); *Firchau v Fos-*

*ter,* 371 Mich 75; 123 NW2d 151 (1963); *Buschlen, supra,* 347.

Certain remarks by plaintiff's counsel appear, as defendants contend, to be violative of the rule that jurors may not be invited to assess damages upon the basis of the amount they would be willing to accept for the wrongs alleged to have been suffered, *Mortensen v Bradshaw,* 188 Mich 436, 442; 154 NW 46 (1915).

Certain other remarks were made to the jury by plaintiff's counsel whereby the counsel attempted to relate his own perceptions of the damages sustained by the plaintiff, outside of the evidence which had been placed on the record.

Both of these types of improper remarks were repeated by plaintiff's counsel even after defendants' initial objections to them were sustained. Defendants' motion for a mistrial was denied, but defendants did not request curative instructions. While it is debatable whether this issue has been properly preserved for review, due to the lack of a request for curative instructions, the remarks did not rise to a level that we consider to evidence a studied purpose to inflame or prejudice the jury. Our view of the record leads us to conclude that plaintiff's counsel was making a good-faith, but perhaps overzealous, attempt to put the damages in practical terms. Defense counsel's timely objection halted the attempt before serious prejudice resulted, and we, therefore, decline to reverse on this issue.

## V

Defendants argue that plaintiff's counsel and

plaintiff's expert assembled a new Primus heater and Coleman propane cylinder and then deliberately manipulated the heater in such a way that it initially appeared to operate normally but later a flame suddenly erupted from the top of the heater.

Defendant Coleman alleges that the experiment was not admissible because plaintiff failed to establish that the circumstances of the test involved conditions sufficiently similar to those involved in the instant case to assist the trier of fact in reaching its conclusion. See *Smith v Grange Mutual Fire Ins Co of Michigan,* 234 Mich 119; 208 NW 145 (1926); *Muniga v General Motors Corp,* 102 Mich App 755, 759; 302 NW2d 565 (1980). However, where no objection is made to the admissibility of evidence at trial, a claimed error is not preserved for appeal, absent manifest injustice. *People v Browning,* 106 Mich App 516, 524; 308 NW2d 264 (1981).

The expert testified that the unit was not safe for use close to combustibles such as a tent for two reasons, its instability and the failure of that type of heater to burn properly; "occasionally you get long flames out of the top which would ignite anything close to it". The record does not indicate what was done by anyone to turn the unit on or to cause the flame of burning gas to erupt. The only statement made with regard to the existence of any type of flame was when plaintiff's counsel asked the expert to identify the "something coming out of the top of that heater at the moment".

Defendants claim that counsel elected to remain silent because the experiment was plainly prejudicial and that counsel did not desire to call atten-

tion to the incident by objection. Such an assertion is unrealistic, at best.

## VI.

Defendants argue that the trial court committed various errors in its jury instructions which mandate reversal, even though no objection was raised at trial.

A failure to object ordinarily precludes appellate review of jury instructions absent manifest injustice. *Howard v Feld,* 100 Mich App 271; 298 NW2d 722 (1980). Our review of the instructions in the instant case discloses no manifest injustice, and we, therefore, decline to reverse on that ground.

## VII

Because of our decision to grant a new trial for the reasons set forth in our discussion of issue I above, it is unnecessary to consider defendant Coleman's claim that the trial court should have granted remittitur.

Reversed and remanded for a new trial.