IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
November 1999 Session


**JAMES CARROLL, ET AL. v. CAROLYN WHITNEY, M.D., ET AL**.


**Appeal By Permission from the Court of Appeals, Western Section**
**Circuit Court for Shelby County**
**No. 68714   Janice M. Holder, Judge**


_____


**No. W1997-00246-SC-R11-CV - Filed October 4, 2000**


_____


E. RILEY ANDERSON, C.J., dissenting.


The majority departs from settled principles of law in holding that a jury may allocate fault to an immune nonparty.  In so doing, it refuses to apply and overrules the application in this case of the Tennessee Supreme Court's unanimous decision just four years ago in <u>Ridings v. Ralph M. Parsons Co.</u>, 914 S.W.2d 79 (Tenn. 1996), that a jury may not allocate fault to an immune nonparty because the immune nonparty owes no duty to the plaintiff and therefore the plaintiff has no cause of action against the immune nonparty.

In my view, the Court of Appeals correctly applied <u>Ridings</u> in concluding that the trial court erred by instructing the jury that it could assign fault to immune nonparties. I am also convinced that the majority's failure to adhere to the doctrine of *stare decisis* by failing to apply a decision released only four years ago undermines the reliability and consistency of this Court's decisions in the area of comparative fault.

 I therefore dissent.


## ANALYSIS


The majority asserts that <u>Ridings</u> is inconsistent with our decision in  <u>McIntyre</u>.  I do not agree.  <u>Ridings</u> is consistent with <u>McIntyre</u> and the principle that a party's liability should be linked to her or her degree of fault.  In fact, <u>Ridings</u> was based directly on <u>McIntyre</u> and is neither unworkable nor unfair to defendants.

In McIntyre, we partially abandoned the doctrine of contributory negligence which barred any recovery for damages and adopted a system of comparative fault under which a plaintiff may recover damages for an injury provided that his or her own negligence in causing the injury is less than the fault of the defendant. In such a case, the plaintiff's recovery is to be reduced by the percentage of his or her own negligence. Id. at 57.

Our decision in McIntyre was a fundamental change in negligence law in Tennessee. It was based on "considerations of fairness and consistency, as well as to avoid the inconsistent and often harsh results to plaintiffs whose negligence was far less than that of a defendant or defendants." Coln v. City of Savannah, 966 S.W.2d 34, 40 (Tenn. 1998); see also Alcazar v. Hayes, 982 S.W.2d 845 (Tenn. 1998) (courts may determine public policy absent a constitutional or statutory declaration).

Contrary to the majority's depiction, McIntyre did not achieve the result of completely linking a party's liability with his or her degree of fault. We did not, for example, adopt a "pure" system of comparative fault under which a plaintiff's recovery is completely linked to his or her fault and under which a plaintiff does not have to be less at fault than a defendant in order to recover. In fact we specifically rejected the pure system in McIntyre. 833 S.W.2d at 57 ("We do not agree that a party should necessarily be able to recover in tort even though he may be 80, 90, or 95 percent at fault."). Thus, a plaintiff who is equally at fault or even slightly more at fault than a defendant may not recover.

Accordingly, in adopting a modified system of comparative fault in McIntyre, we considered matters of policy and fairness to both plaintiffs and defendants in a lawsuit. The effect of McIntyre's fairness formula allowed plaintiffs to recover when partly at fault, yet eliminated joint and several liability so that the defendant was responsible only for its own fault. Under McIntyre, the plaintiff now assumes the risk of an insolvent defendant and the risk that he or she may not receive full compensation for damages.

In Ridings, we held that a defendant could not assert as an affirmative defense that the plaintiff's employer, a nonparty, caused or contributed to the injuries when the plaintiff did not have a cause of action in tort against the employer.[1] The majority now contends that this holding is inconsistent with the adoption of a "nonparty" defense in McIntyre. This contention was unanimously rejected in Ridings:

> The rationale of McIntyre postulates that fault may be attributed only to those persons against whom the plaintiff has a cause of action in tort. The designation 'nonparty' used in McIntyre is not a term of art; it means 'not a party.' However, it is given a particular meaning by the decision in McIntyre, wherein the Court found that, upon a defendant's allegation that a person not a party to the suit, a 'nonparty,' caused or contributed to the plaintiff's injuries, the plaintiff, by amendment to the complaint and service of process, may make the 'nonparty' a 'party' that is answerable to the plaintiff

---

[1] The plaintiff's action against the employer fell under the workers compensation statutes.

in actions for damages according to the Rules of Civil Procedure.  Consequently only a nonparty against whom the plaintiff has a cause of action can be made a party.  Since the plaintiff's employer cannot be made a party to the plaintiff's tort action for personal injuries sustained in the course and scope of his employment, *the rationale of McIntyre, both as to principle and procedure, will not permit fault to be attributed to the plaintiff's employer*."

Ridings, 914 S.W.2d at 81-82 (emphasis added).  Accordingly, the majority's view that Ridings is inconsistent with McIntyre is unfounded.

Just three years ago, we reaffirmed Ridings in Snyder v. LTG Luftechnishe GmbH, 955 S.W.2d 252 (Tenn. 1997), but clarified that a defendant is not prohibited from showing evidence that an immune nonparty was the cause in fact of an injury.  Moreover, we again rejected the arguments that Ridings was unfair to defendants and inconsistent with McIntyre:

There is no question that the Court in Ridings considered the 'fairness' arguments advanced here by the defendants and made a policy decision to leave immune [nonparties] out of the assessment of fault.  We thus decline the defendants' invitation to reverse Ridings or otherwise depart from the rule adopted in that decision.

955 S.W.2d at 256; see also Brown v. Walmart, 12 S.W.3d 785 (Tenn. 2000) (fault may not be assigned to an unknown tortfeasor).  These are now, however, the very same arguments the majority accepts for refusing to apply Ridings.[2]

In sum, our comparative fault decisions beginning with McIntyre have been guided by policy and fairness concerns.  As can be seen, Ridings was expressly based upon McIntyre.  Nothing in McIntyre or Ridings has changed – the "principle and procedure" remain the same.  Only the Court has changed, a majority of which has decided to adopt a different policy based on its view that Ridings is now inconsistent with McIntyre and unfair to defendants because it does not fully link a defendant's liability with its degree of fault.  I cannot agree with this 180-degree change in course.

The majority supports its abrupt change of direction by asserting that Ridings has proven to be unworkable in all but workers' compensation cases and an impediment to appellate review.  It

---

[2]  The majority asserts that it is joining the "vast majority" of comparative fault jurisdictions which, unlike Ridings, "broadly permit allocation of fault to all persons involved in an injury causing event."  It should be pointed out, however, that several of the jurisdictions have taken this position through legislative acts and not through the development of case law.  E.g., Ariz. Rev. Stat. § 12-2506A (1998).  Moreover, I note that a number of other cases, including all states in the sixth federal circuit, do not allocate fault to all the persons involved.  Bradford v. Herzig, 638 A.2d 608 (Conn. App. Ct. 1994); Payne Plumbing & Heating Co. v. Bob McKiness Excavating & Grading, 382 N.W.2d 156 (Iowa 1986); Baker v. Webb, 883 S.W.2d 898 (Ky. Ct. App. 1994); Anderson v. Harry's Army Surplus, Inc., 324 N.W.2d 96 (Mich. Ct. App. 1982); Adams v. Children's Mercy Hospital, 848 S.W.2d 535 (Mo. App. 1993), overruled on other grounds, 897 S.W.2d (Mo. 1995); Eberly v. A-P Controls, Inc., 572 N.E.2d 633 (Ohio 1991); Ewen v. McLean Trucking Co., 689 P.2d 1309 (Or. Ct. App. 1984), reversed on other grounds, 706 P.2d 929 (Or. 1985). Thus, the principle in Ridings is not an isolated or unworkable view.

argues that the trial court's instruction for the jury to assign fault to immune nonparties resulted in a "fully informed" verdict that cannot effectively be reviewed. It also contends that under <u>Ridings</u> a jury may act out of sympathy for the plaintiff and assign an undue percentage of fault to a defendant because it is prevented from assigning fault to the immune nonparty. These concerns are misplaced for several reasons.

First, there is no question that the trial court's instruction was erroneous and improper under <u>Ridings</u>, which was decisional law at the time of trial. Even if one accepts the majority's assertion – which I do not – that the "error" enabled the jury to be more "fully informed" of the facts, it was "not informed" of the law to be applied to those facts. Far from rendering the verdict harmless, the verdict is inherently, legally flawed. Moreover, under <u>Snyder</u>, the jury is not precluded from hearing the facts about the conduct of an immune nonparty for the purpose of considering the element of causation.

Next, unlike the majority, I am unwilling to presume that under <u>Ridings</u> a jury will disregard its instructions and base its verdict solely upon sympathy for the plaintiff. The Supreme Court has as a matter of institutional faith based its decisions on a presumption that juries are honest and conscientious and will follow instructions given to them. <u>E.g.</u>, <u>State v. Williams</u>, 977 S.W.2d 101, 106 (Tenn. 1998) (jury is presumed to have followed instructions). Under <u>McIntyre</u>, if a plaintiff is not less at fault than a defendant, the plaintiff cannot recover. Nothing in <u>Ridings</u> changed this fundamental procedure.

The majority's decision also fails to take into account the implications of immunity. The decision to extend immunity to a person or entity, as in this case with state employees, is generally a legislative determination that, in theory, benefits the public as a whole. In the context of litigation, however, it creates a risk of loss that is borne by a plaintiff who cannot recover in tort from the immune person or entity. In <u>Ridings</u>, we balanced the risk by holding that a defendant, similar to the plaintiff, cannot assign fault to an immune nonparty. Without any new or intervening reason, the majority has now completely reversed course and has placed the entire risk of loss on the plaintiff. As one commentator has written, plaintiffs should not be punished "for society's choice to render certain persons immune from tort liability." Cardi, <u>Apportioning Responsibility to Immune Nonparties: An Argument Based on Comparative Responsibility and the Proposed Restatement (Third) of Torts</u>, 82 Iowa L. Rev. 1293 (1997).[3]

Finally, the majority's decision violates the fundamental principle of *stare decisis*. This principle, under which a court should depart from its prior decisions only upon rare and exceptional occasions, is designed to achieve consistency in the law and to promote confidence and reliance on the Court's decisions. <u>E.g.</u>, <u>Barnes v. Walker</u>, 234 S.W.2d 648 (Tenn. 1950). Accordingly, under *stare decisis,* when a supreme court re-examines a prior holding it is required to ask whether related

---

[3]     I would also observe that the majority has chosen the new course without briefing or consideration of other alternatives for addressing the risk of loss created by the presence of an immune nonparty, such as distributing the fault of an immune nonparty between the parties.

principles of law have so far developed that the old rule has been left no more than a remnant of abandoned doctrine, whether facts have changed from those which furnished the justification for the earlier decision so as to rob the old rule of its justification, whether the rule has been subject to the kind of reliance that would lend hardships to the consequences of overruling it and add inequity to the cost of repudiation, and finally, whether the rule has proven to be intolerable in defying practical workability. See Patterson v. McLean Credit Union, 491 U.S. 164, 173, 109 S. Ct. 2363, 2370, 105 L.Ed.2d 132 (1989); United States v. Title Ins. & Trust Co., 265 U.S. 472, 486, 44 S. Ct. 621, 623, 68 L.Ed. 1110 (1924).

When the *stare decisis* principle is applied in this case, the answer is clear – the Ridings rule is alive and well and no related legal principles have in any sense developed so as to require its abandonment. To the contrary, it has been a fundamental building block in the development of comparative fault law. Nor have any facts changed since the adoption of McIntyre or Ridings which would rob Ridings of its justification.[4] Although the majority now limits Ridings to workers' compensation cases, there was no such limitation or explanation in either Ridings or Snyder. Moreover, this Court had previously cited to or discussed Ridings on several occasions without either limiting the rule to workers' compensation cases or indicating that the sole basis for the rule was an employer's right of subrogation. E.g., Brown v. Wal-Mart Discount Cities, 12 S.W.3d 785 (Tenn. 2000); Samuelson v. McMurtry, 962 S.W.2d 473 (Tenn. 1998); George v. Alexander, 931 S.W.2d 517 (Tenn. 1996). Accordingly, the majority's claim that its new decision is consistent with the doctrine of *stare decisis* is unconvincing.

All of the people of Tennessee, its citizens and corporations, its bench and bar, have relied on the rules laid down by McIntyre, Ridings, and their progeny, as have those who have made subsequent laws and all have made choices in reliance on these principles. The rules have worked and will work in practical terms and to repudiate them will cause serious inequity and hardship. Because neither the facts nor the circumstances nor the surrounding legal principles have changed, this Court's re-examination of this case has no justification beyond a present doctrinal decision to reach a different result from the unanimous Ridings Court. That is a grossly inadequate basis for overruling a prior case and is a threat to the institutional consistency of the Supreme Court.

**CONCLUSION**

---

[4] Ridings is therefore in stark contrast to the cases cited by the majority in which the Court has departed from *stare decisis*. For example, in State v. Dominy, 6 S.W.3d 472 (Tenn. 1999), we overruled a rule that had proven to be unworkable for trial courts and unfair to both the State and defendants. In State v. Reeves, 916 S.W.2d 909 (Tenn. 1996), we overruled a rule that no longer was consistent with amended statutory law. In State v. Kendricks, 891 S.W.2d 597 (Tenn. 1994), we overruled a doctrine that was initiated in 1848, had an explicitly sexist genesis, was unworkable and prejudicial to defendants. In State v. Middlebrooks, 840 S.W.2d 317 (Tenn. 1992), we overruled a prior interpretation of law based specifically on the Tennessee Constitution.

In <u>McIntyre</u>, this Court acted in the interest of sound policy and adopted a system of modified comparative fault based on fairness to both plaintiffs and defendants. Our unanimous decision in <u>Ridings</u> was expressly based on <u>McIntyre</u>. There is nothing in this case that demonstrates <u>Ridings</u> was wrongly decided or should be abandoned in all but workers' compensation cases. Although the majority states that the motivation for its new decision is to achieve fairness by more closely linking a party's liability with his or her degree of fault, the majority's discussion does not consider a "pure" system of comparative fault. Instead, the majority's failure to apply <u>Ridings</u> simply indicates that it has opted for a different policy.

The doctrine of *stare decisis* is one of "paramount importance" and the power of the Court to overrule prior decisions should be used sparingly. <u>Barnes v. Walker</u>, 234 S.W.2d at 649. Because I am convinced that the majority's decision creates inconsistency in the law and undermines the reliability of this Court's decisions as an institution, I believe this is a classic example of when adherence to *stare decisis* is appropriate. I therefore dissent.

 

_____

E. RILEY ANDERSON, CHIEF JUSTICE