WIGGINTON v CITY OF LANSING

Docket No. 62143. Submitted April 7, 1983, at Lansing.—Decided
September 26, 1983. Leave to appeal applied for.

Bruce S. Wigginton, as fiduciary of the estate of his mother,
Melva I. Wigginton, deceased, brought an action for damages
against the City of Lansing, Lansing police officers James Cook
and Peter Zivic, and several others. Plaintiff alleged that Mrs.
Wigginton's death was caused by the negligence, wilful and
wanton misconduct, and gross negligence of the defendants.
Mrs. Wigginton was shot to death by Edward W. Martin, Jr.,
who then shot and killed himself. Martin, an armed off-duty
Ingham County Sheriff's Deputy, was taken by officers Cook
and Zivic from Mrs. Wigginton's home in an allegedly intoxi-
cated state and was delivered to his own home. A short while
later he returned to the Wigginton home and the shootings
followed. Prior to trial plaintiff reached settlements with the
other defendants and trial proceeded against the City of Lans-
ing, Cook and Zivic. A judgment was entered on a jury verdict
of no cause of action, Ingham Circuit Court, Thomas L. Brown,
J. Plaintiff's motion for new trial was denied and plaintiff
appealed, alleging that the verdict was against the great weight
of the evidence, that the trial court erroneously instructed the
jury on the doctrine of comparative negligence, that the court
erred by excluding rebuttal evidence regarding Martin's cruelty

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 887.
  58 Am Jur 2d, New Trial §§ 139, 140.
[2] 57 Am Jur 2d, Negligence § 67.
[3] 57 Am Jur 2d, Negligence §§ 34, 295.
[4] 6 Am Jur 2d, Assault and Battery §§ 75, 82.
[5] 75 Am Jur 2d, Trial §§ 661, 746.
[6] 29 Am Jur 2d, Evidence §§ 250, 269.
[7] 5 Am Jur 2d, Appeal and Error §§ 545, 548.
  75 Am Jur 2d, Trial § 708.
[8] 75 Am Jur 2d, Trial § 610.
  76 Am Jur 2d, Trial § 1141.
  Construction of statutes or rules making mandatory the use of
    pattern or uniform approved jury instructions. 49 ALR3d 128.

toward his ex-wife, that defense counsel's prejudicial remarks denied plaintiff a fair trial, and that the court erred by failing to furnish the jury with verdict forms that conformed to the Standard Jury Instructions. *Held:*

1. Sufficient evidence was presented on the theories of both the plaintiff and the defendants to present a question for the jury on the reasonableness of the actions of the police officers. The trial court did not abuse its discretion by denying the motion for a new trial based on the insufficiency of the evidence.

2. The trial court erred by instructing the jury regarding the comparative negligence of Mrs. Wigginton. While she had a duty to exercise reasonable care for her own safety, she had no duty to retreat from the threat of danger in her own home. Because her failure to retreat was the only evidence defendants presented to support their argument that she was negligent, the instruction to the jury on comparative negligence was improper, and requires reversal.

3. The proffered evidence regarding Martin's past behavior toward his ex-wife, which allegedly occurred several years previously, was properly excluded as irrelevant and as extrinsic evidence on a collateral matter.

4. Plaintiff's failure to object at trial to defense counsel's remarks waives the issue of their propriety for appeal except where the remarks were so prejudicial that an objection and a curative instruction would not have cured the prejudice. One of the complained-of remarks was so prejudicial as to constitute error; however, it is not necessary to decide whether this error requires reversal because reversal is grounded on another issue.

5. The trial court erred by failing to furnish the jury with verdict forms conforming to the requirements of SJI 66.01. However, because that form is appropriate only in a case involving comparative negligence, and it has been found that a comparative negligence instruction was improper, it is not necessary to decide whether this error requires reversal.

Reversed and remanded.

1. NEW TRIAL — JUDGE'S DISCRETION — APPEAL.

The grant or denial of a motion for a new trial on the basis that the verdict was against the great weight of the evidence is within the sound discretion of the trial court; on appeal from the trial court's decision the Court of Appeals considers whether the verdict was against the overwhelming weight of

the evidence, deferring to the trial court's opportunity to judge the credibility of the witnesses.

2. Negligence — Duty — Reasonable Care.

Every individual has a duty to exercise reasonable care for his or her own safety.

3. Negligence — Duty — Contributory Negligence.

The question of a party's duty is generally one of law; the question of a party's contributory negligence is one of fact to be determined by the jury.

4. Criminal Law — Assault — Duty To Retreat.

A person attacked in his own dwelling is under no duty to retreat from the threat of danger.

5. Trial — Jury Instructions — Theory of Case.

It is error requiring reversal for a trial court to instruct a jury on a theory which is unsupported by the evidence presented.

6. Evidence — Rebuttal Evidence — Collateral Matters.

Rebuttal evidence may properly be admitted to contradict answers which a party elicits from his or her adversary's witnesses on cross-examination as to material issues; however, a witness may not be contradicted as to collateral, irrelevant, or immaterial matters, nor may extrinsic evidence be admitted to impeach a witness on a collateral matter.

7. Appeal — Remarks of Counsel — Waiver.

Failure of a party to object at trial to allegedly improper remarks of counsel waives the alleged errors on appeal unless the remarks were so prejudicial that a timely objection and curative instruction would not have cured the prejudice.

8. Jury — Verdict Forms — Jury Instructions.

Jury verdict forms, where applicable, must conform with the requirements of the Standard Jury Instructions.

*Anderson, Carr & Street* (by *Cassius E. Street, Jr.),* and *Blackburn & Backus* (by *Joseph B. Backus),* for plaintiff.

*Denfield, Timmer & Taylor* (by *George H. Denfield),* for defendants.

Before: D. E. HOLBROOK, JR., P.J., and HOOD and
T. M. GREEN,* JJ.

HOOD, J. Plaintiff appeals as of right from the
denial of his motion for new trial or to set aside
the jury verdict of no cause of action entered by
the trial court on December 21, 1981.

Plaintiff, Bruce Wigginton, as fiduciary of his
mother Melva Wigginton's estate, sued Robert G.
Weed, administrator of the estate of Edward W.
Martin, Jr., the County of Ingham, Kenneth
Preadmore, the Ingham County Sheriff's Depart-
ment, the City of Lansing, James Cook, and Peter
Zivic in June, 1977. He alleged that his mother's
wrongful death was proximately caused by the
defendants' negligence, wilful and wanton miscon-
duct, and gross negligence. He also alleged that
the defendants violated his mother's federal civil
rights. 42 USC 1981, 1983, and 1985.

Prior to trial, defendants Weed, Ingham County,
Ingham County Sheriff's Department, and Pread-
more settled with plaintiff and were dismissed as
parties.

Trial commenced on October 6, 1980. A recita-
tion of some of the facts brought out at the trial is
beneficial to our discussion of the issues. Mrs.
Melva Wigginton was shot to death in her home
by Edward Martin, Jr., an off-duty Lieutenant of
the Ingham County Sheriff's Department, on July
3, 1974. After shooting Mrs. Wigginton, Martin
shot and killed himself. Martin's blood alcohol
level at the time of his death was .22%.

Lt. Martin and Mrs. Wigginton, the divorced
mother of five children, had dated for approxi-
mately one year prior to their deaths. However,
Mrs. Wigginton had stopped seeing Martin about

* Circuit judge, sitting on the Court of Appeals by assignment.

three weeks before the shooting, partly because she feared his bad temper.

On July 2, 1974, at about 11:30 p.m., Mrs. Wigginton returned home from a date with Robert Trudeau. Martin drove up to her home, stormed up to her porch, apparently intoxicated, and said: "You are giving it all up, Melva". After Martin left, neighbors came to Mrs. Wigginton's house to stay with her because she was frightened by Martin. Mrs. Wigginton, her neighbors, and Trudeau went to a local restaurant for coffee at about 1:30 a.m. Mrs. Wigginton turned a light on in the house, locked the front door, and left the back door unlocked.

When Mrs. Wigginton and Trudeau returned to her house at about 4:00 to 4:30 a.m., July 3, 1974, they found a white car parked in her garage, the house dark, the back door locked, and the front door unlocked. Martin was asleep in a chair in Mrs. Wigginton's living room holding a pistol in his hands. Mrs. Wigginton and Trudeau went to her neighbors' house to call the police.

About 15 to 20 minutes later, a police officer arrived at Mrs. Wigginton's home and talked to her and Trudeau outside the house. Mrs. Wigginton told the officer, defendant James R. Cook, that Martin was in her house without permission and with a gun. She also told him that Martin was a police officer.

Another officer, defendant Peter Zivic, arrived soon after. The officers shouted at Martin, removed him from the house, and placed him in a police car. Plaintiff's witnesses said that one officer told them they were taking Martin home and taking his gun away as he appeared to be drunk; that he was not being arrested because "he had not broken any law".

Trudeau remained with Mrs. Wigginton because she was frightened. At about 6:30 or 7:00 a.m., she woke Trudeau because a car was in her driveway. Martin exited from the car and pounded on Mrs. Wigginton's back door. He carried a gun. Martin came to the front door and put his hand through the locked screen door. Trudeau telephoned the Lansing police again. While phoning, he heard two gun shots at the back door. Trudeau and Mrs. Wigginton went upstairs to two separate bedrooms. Trudeau heard screams and struggling on the stairway, then two more shots. Police officers arrived as Trudeau walked downstairs. Martin was lying on the floor and Mrs. Wigginton was slouched over a chair bleeding from a chest wound.

Defendant Cook testified at trial that he found Martin in Mrs. Wigginton's house asleep, with a gun lying on the floor near his feet. Officer Cook unloaded the gun and asked Martin what he was doing there. Martin responded that he wanted to talk to the lady. Cook smelled alcohol on Martin's breath but said Martin did not appear intoxicated. Cook drove Martin home and returned Martin's gun and ammunition to him.

Office Zivic testified that he also answered Mrs. Wigginton's call. After Cook left with Martin, Zivic talked to Mrs. Wigginton and two others outside of her house. Mrs. Wigginton said that Martin could not accept the fact that she no longer wanted to see him and that she wanted him out of her house. Trudeau asked why Martin wasn't being taken to jail or arrested. Zivic said Martin had not committed a crime.

Plaintiff's expert witness, Dr. Erik Beckman, a professor of criminal justice, testified that Martin could have been arrested for entry into a building

without breaking or entry into a building without breaking with intent to commit a felony, because Martin possessed a firearm while under the influence of alcohol. Dr. Beckman opined that taking Martin home and returning his gun was a serious and reckless departure from normal and safe police procedures by Cook and Zivic.

The Chief Prosecutor of Ingham County's Criminal Division testified that, based on Cook's and Zivic's report of the incident written after the shooting, Martin had not violated any law. However, had Martin been under the influence of alcohol and possessed a gun in the officers' presence, he could have been arrested. Lansing's Chief of Police testified that the department had no written policy about how officers should deal with guns in 1974.

Mrs. Martin testified for the defense that she had instituted divorce proceedings against her husband shortly before he died. She said he was a kind and gentle man and had never threatened her.

Plaintiff's counsel attempted to introduce portions of three circuit court files to rebut Mrs. Martin's characterization of her husband. Those files dealt with the Martin's divorce. The trial court refused to admit that evidence.

On October 22, 1980, the jury returned a verdict of no cause of action.

On November 18, 1980, plaintiff filed a motion for new trial or to set aside the verdict. The trial court denied the motion in a December 21, 1981, opinion.

Plaintiff raises five issues on appeal, one of which we find clearly requires reversal.

First, plaintiff argues that the trial court erred by denying his motion for a new trial over his

objection that the verdict was against the great weight of the evidence. GCR 1963, 527.1(5).

The grant or denial of a motion for new trial is within the trial court's sound discretion. *Isom v Farrugia*, 63 Mich App 351, 355; 234 NW2d 520 (1975). Our standard of review is whether the verdict was against the overwhelming weight of the evidence. *Isom, supra; Drouillard v Metropolitan Life Ins Co*, 107 Mich App 608, 623; 310 NW2d 15 (1981), *lv den* 413 Mich 874 (1982). We defer to the trial judge as uniquely qualified to judge the witnesses' credibility. *Drouillard, supra.*

In this case, the trial court found that there was evidence to support both plaintiff's and defendants' theories. The evidence showed that Martin was authorized to carry a gun. Whether Martin was intoxicated was disputed, although there was no doubt that he had been drinking. The evidence regarding the danger to Mrs. Wigginton was also disputed. Martin apparently cooperated with officers Zivic and Cook and was not threatening in their presence. Therefore, although plaintiff presented strong evidence to support his theory, defendants also presented evidence sufficient to present the reasonableness of their actions as a fact question to the jury. The trial court did not abuse its discretion by denying the motion for new trial.

Plaintiff next argues that the trial court erred by instructing the jury on the doctrine of comparative negligence. Defendant theorized, and argues on appeal, that had Mrs. Wigginton actually been in fear of her life, she could have removed herself and her children from her home after Martin's first unauthorized entry. The trial court did instruct the jury regarding Mrs. Wigginton's potential negligence and the doctrine of comparative negligence and did give the jury a verdict form

that included the question of whether Mrs. Wigginton was negligent. See SJI 66.01. Plaintiff's counsel objected to those instructions and jury form.

While we note that the jury never reached a decision regarding Mrs. Wigginton's possible negligence, we nevertheless find that this instruction was erroneous and requires reversal.

Every individual has a duty to exercise reasonable care for his or her own safety. See *Jaworski v Great Scott Supermarkets, Inc,* 403 Mich 689; 272 NW2d 518 (1978). The question of duty is normally one of law, *Sowels v Laborers' International Union of North America,* 112 Mich App 616; 317 NW2d 195 (1981). The question of contributory negligence is a question of fact to be determined by the jury. *Jaworski, supra,* p 697.

Plaintiff does not dispute that his mother had a duty to exercise reasonable care for her own and her children's safety. However, plaintiff does dispute that that duty included a responsibility to leave one's own home when faced with a potential danger of assault from a third party. Plaintiff argues that, because defendants presented no other evidence that Mrs. Wigginton breached her duty of reasonable care, the question of her negligence never should have reached the jury. We agree.

While there is no Michigan case law directly on point, we believe the law on self-defense and the duty to retreat in criminal cases is analogous and instructive.

" 'It is not now, and never has been the law that a man assailed in his own dwelling, is bound to retreat. If assailed there, he may stand his ground, and resist the attack. He is under no duty to take to the fields and the highways, a fugitive from his own home. * * * The rule

is the same whether the attack proceeds from some other occupant or from an intruder. It was so adjudged in *Jones v State* (76 Ala 8, 14 [1884])' ".

*People v Lenkevich,* 394 Mich 117, 121-122; 229 NW2d 298 (1975), quoting *People v Tomlins,* 213 NY 240, 243-244; 107 NE 496; Ann Cas 1961c, 916 (1914). See CJI 7:9:03. This rule that an individual has no duty to retreat from the threat of danger from another while in his or her home has been recognized in Michigan for well over a century. See *Pond v People,* 8 Mich 150 (1860).

Thus, we find that Mrs. Wigginton had no duty to retreat as a part of the exercise of reasonable care in this case. As her failure to retreat was the only evidence presented by defendants to support their argument that Mrs. Wigginton was negligent, we find the trial court erred by giving the comparative negligence instructions. *Jaworski, supra,* p 697. Indeed, the evidence presented showed that Mrs. Wigginton did exercise her duty of reasonable care. First, there was no evidence presented that she invited Martin's attack. Second, she called for police assistance when she, first found Martin in her home. Third, she followed defendant Zivic's advice by going into her home, locking all her doors, and again calling the police when Martin reappeared.

We also find that the trial court's error in instructing the jury on comparative negligence was not harmless. Instruction on a theory unsupported by proof is error requiring reversal. *Embrey v Weissman,* 74 Mich App 138, 143; 253 NW2d 687 (1977); *Smith v Jones,* 382 Mich 176, 191-192; 169 NW2d 308 (1969).

Next, plaintiff argues that the trial court erred by excluding rebuttal evidence of Martin's extreme

cruelty toward Mrs. Martin, as alleged in Mrs. Martin's divorce pleadings in a prior divorce action she had brought in 1961 but which had been dismissed prior to judgment.

Rebuttal evidence is properly admitted to contradict answers which a party elicits from his or her adversary's witnesses on cross-examination as to material issues. A witness may not be contradicted as to collateral, irrelevant, or immaterial matters. *People v McGillen #1,* 392 Mich 251, 266-267; 220 NW2d 677 (1974); *People v Wilson,* 119 Mich App 606, 612-613; 326 NW2d 576 (1982). Furthermore, extrinsic evidence may not be admitted to impeach a witness on a collateral matter. *People v Teague,* 411 Mich 562, 566; 309 NW2d 530 (1981).

Whether Mrs. Martin knew her husband to be a violent or threatening man was not a material or relevant issue in this case. Moreover, whether Mrs. Martin may have known her husband to be threatening in 1961 does not bear upon the defendants' knowledge of Martin's behavior in July, 1974. Thus, the trial court properly refused to admit plaintiff's exhibits, Mrs. Martin's earlier divorce pleadings, as irrelevant and as extrinsic evidence bearing upon a collateral matter.

Plaintiff's fourth argument on appeal is that defense counsel's conduct was so improper during trial that plaintiff was denied a fair trial. However, plaintiff's counsel failed to object to any of these allegedly improper prejudicial comments during trial.

Failure to object waives the alleged errors on appeal unless the statements were so prejudicial that a timely objection and curative instruction would not have cured that prejudice. *Kujawski v Boyne Mountain Lodge, Inc,* 379 Mich 381, 385;

151 NW2d 794 (1967); *Bourke v North River Ins Co,* 117 Mich App 461, 466; 324 NW2d 52 (1982).

While we agree with plaintiff that some of defense counsel's remarks were improper, we find only one that was so prejudicial that we do not believe a timely objection or curative instruction would have cured that error. Prior to trial, the court granted plaintiff's motion to exclude evidence or mention of plaintiff's settlement with Martin's estate or any of the dismissed parties to the suit. However, in closing argument defense counsel stated:

"Well, I submit to you that there was absolutely nothing that these officers did or did not do that in any way could have guaranteed Melva Wigginton her life—absolutely nothing.

"and isn't it interesting—isn't it interesting that the only man—the only man that was solely responsible for her death is not a party to this lawsuit, nor his estate. Now that's got to tell you something, and it tells me that they want to divert your attention away from that issue so you forget Ed Martin, the fact that he was responsible, so you can tunnel in on these two gentlemen and the City of Lansing, and they put a big price tag on top of the case."

Defense counsel made this remark in direct violation of the trial court's order excluding such matters. We find that the remark was prejudicially misleading to plaintiff's case on the issue of proximate cause and that the prejudice could not have been cured by a curative instruction. However, we decline to decide whether this error requires reversal as we find reversal warranted for another reason, *supra.*

Finally, we agree with plaintiff's argument that the trial court erred by failing to furnish the jury with verdict forms that conformed with the re-

quirement of SJI 66.01. *Javis v Ypsilanti Bd of Ed,*
393 Mich 689, 697; 227 NW2d 543 (1975); GCR
1963, 516.6(2). We need not decide whether this
error requires reversal as that verdict form is
appropriate only for cases where a comparative
negligence instruction is appropriate. As we find
that a comparative negligence instruction was
improper and requires reversal in this case, this
issue should not arise on a retrial.

Reversed and remanded for new trial. Costs to
plaintiff.