## MAY v PARKE, DAVIS & COMPANY

Docket No. 73452. Submitted December 4, 1984, at Detroit.—Decided
May 6, 1985. Leave to appeal applied for.

Plaintiff, Alan May, as personal representative of the estate of
Martha Sue Ash, deceased, brought a wrongful death action
against defendant, Parke, Davis & Company. Decedent had died
several days after beginning to take the drug Norlestrin, a
birth control pill manufactured by defendant. The cause of
death was concluded to be a blood clot in the brain. Plaintiff
alleged that defendant was negligent in failing to warn the
prescribing physician that: the dosage of estrogen in Norlestrin
created a risk of blood clotting, a family history of strokes is an
indicator of blood clotting potential in a patient, certain blood
tests are useful in screening potential users for hyper-coagula-
bility, and persons with Type A blood have a greater risk of
blood clotting. The Wayne Circuit Court, Maureen Pulte Reilly,
J., entered judgment on a jury verdict in favor of the plaintiff.
The court denied defendant's motion for a new trial or, in the
alternative, for judgment notwithstanding the verdict, and
defendant appealed, alleging that for several reasons the plain-
tiff had failed to present a prima facie case of negligence. *Held:*

   1. The jury was properly allowed to determine whether

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and Error §§ 850-852, 866.
   58 Am Jur 2d, New Trial §§ 212, 213.
[2] 57 Am Jur 2d, Negligence § 32 *et seq.*
   Foreseeability as an element of negligence and proximate cause.
   100 ALR2d 942.
[3] 63 Am Jur 2d, Products Liability § 344 *et seq.*
   Manufacturer's or seller's duty to give warning regarding product
   as affecting his liability for product-caused injury. 76 ALR2d 9.
[4] 63 Am Jur 2d, Products Liability §§ 328, 331.
   Liability of manufacturer or seller for injury or death allegedly
   caused by failure to warn regarding danger in use of vaccine or
   prescription drug. 94 ALR3d 748.
[5] 57 Am Jur 2d, Negligence §§ 198, 205.
[6] 5 Am Jur 2d, Appeal and Error § 881.
[7] 75 Am Jur 2d, Trial § 708.
[8] 75 Am Jur 2d, Trial § 236.

defendant had a duty to give a warning that certain patients may be susceptible to blood clotting disorders, to recommend that a doctor determine whether there was a family history of strokes and that certain tests be given, and to warn that patients with Type A blood faced a greater risk.

2. The testimony of plaintiff's expert witnesses regarding the decedent's blood type was properly admitted. Although no blood test had been performed, the plaintiff was not precluded from using circumstantial evidence to show the probability that decedent had Type A blood. The trial court did not abuse its discretion in allowing the expert testimony on this issue.

3. Plaintiff presented sufficient evidence to allow a jury decision on whether an adequate warning would have influenced the prescribing physician to alter his conduct regarding the decedent's use of Norlestrin.

4. The trial court did not abuse its discretion by denying the admission of evidence to show that the Food and Drug Administration probably would not have permitted defendant to warn of the higher risk to persons with Type A blood. The proffered evidence was in the nature of hearsay and, further, dealt with proposals submitted to the FDA four years after the events in this case.

5. Defendant's allegation that plaintiff's counsel deliberately attempted to create prejudice, bias and sympathy during closing argument is not supported by the record. Plaintiff's counsel's argument was, on the whole, proper and any prejudice which might have occurred was cured by the trial court's instruction to the jury.

Affirmed.

1. New Trial — Appeal.

The grant or denial of a motion for a new trial is within the discretion of the trial court; the standard of review of the decision is whether the jury's verdict was against the great weight of the evidence, and the reviewing court will give deference to the trial judge's decision and will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage of justice.

2. Negligence — Elements of Negligence — Sufficiency of Proofs.

A plaintiff, to establish a prima facie case of negligence, must prove the existence of a legal duty owed to the plaintiff by the defendant, that the defendant failed to exercise ordinary care in performing that duty, and that the plaintiff suffered damages proximately resulting from the defendant's negligence; a

case should be removed from the jury's consideration only where the evidence clearly demonstrates that the plaintiff failed to present sufficient proofs on each of these elements.

3. PRODUCTS LIABILITY — PRODUCT WARNINGS — UNAVOIDABLY UNSAFE PRODUCT.

Unavoidably unsafe products must be properly marketed with adequate warnings of their dangers; the adequacy of a warning is an issue of reasonableness.

4. PRODUCTS LIABILITY — PRESCRIPTION DRUGS — PRODUCT WARNINGS.

A plaintiff seeking recovery from a manufacturer of a prescription drug on the basis of inadequate warnings must show, to establish the element of causation, that an adequate warning would have prevented the injury by altering the prescribing doctor's conduct or that the doctor might have heeded an adequate warning.

5. NEGLIGENCE — PROXIMATE CAUSE — INTERVENING NEGLIGENT ACT — SUPERSEDING CAUSE.

An act of negligence does not cease to be a proximate cause of an injury because of an intervening act of negligence if the prior negligence is still operating and the injury is not different in kind from that which would have resulted from the prior act; whether an intervening negligent act of a third person constitutes a superseding proximate cause is a question for the jury.

6. EVIDENCE — ADMISSIBILITY OF EVIDENCE.

The admissibility of evidence lies within the discretion of the trial court and the court's decision will not be reversed on appeal unless there has been an abuse of discretion.

7. TRIAL — ARGUMENT OF COUNSEL — ATTORNEY'S MISCONDUCT.

An attorney's misconduct during closing argument is grounds for reversal if it may have caused the result or played too large a part and may have denied a party a fair trial; the course of misconduct must have been so persistently followed that an instruction from the court in an effort to obviate the prejudice would have been useless.

8. TRIAL — EVIDENCE — ARGUMENT OF COUNSEL — FAILURE TO PRODUCE EVIDENCE.

It is permissible for counsel to point out that an opposing party failed to produce evidence that it might have, and consequently the jury may draw an inference against the opposing party.

*Thomas H. Bleakley, P.C.* (by *Brian J. McKeen*), for plaintiff.

*Miller, Canfield, Paddock & Stone* (by *Wolfgang Hoppe, Gillian Steinhauser,* and *Sally L. Geib*), for defendant.

Before: Hood, P.J., and T. M. Burns and R. H. Bell,* JJ.

T. M. Burns, J. Defendant appeals as of right from a jury verdict rendered against it and an award of damages in the sum of $2,275,000.

In the fall of 1975, plaintiff's decedent, Martha Sue Ash, a 20-year-old college student, sought birth control information from Dr. Harold Reid in contemplation of her upcoming marriage. Dr. Reid prescribed Norlestrin 1 mg., which is a birth control pill manufactured and sold by defendant, Parke, Davis & Company. Norlestrin 1 mg. contains 50 mcg. of ethinyl estradiol, a synthetic estrogen.

On December 1, 1975, Ms. Ash began taking one of these pills daily in accordance with the prescription. On December 20, 1975, approximately 19 days later, Ms. Ash suddenly collapsed and lapsed into unconsciousness. She was immediately admitted to the hospital. After varying periods of consciousness, she lapsed into a coma and died on December 26, 1975.

Dr. Gordan Ohl performed an autopsy on Ms. Ash on December 27, 1975. He concluded that the cause of death was a blood clot in the brain which caused destruction in the brain stem. He also found multiple pre-mortem blood clots in the lungs, measuring up to 5 centimeters in their greatest dimension.

Plaintiff, the personal representative of decedent's estate, brought this wrongful death action against defendant alleging *inter alia* that defen-

* Circuit judge, sitting on the Court of Appeals by assignment.

dant was negligent in failing to inform Dr. Reid that: 1) the dosage level of estrogen in the birth control pill Norlestrin created a greater risk of blood clotting in users than birth control pills containing lower dosages of estrogen; 2) a family history of strokes in a patient contemplating the use of birth control pills is an indicator of blood clotting potential in a person; 3) certain blood tests are useful in screening potential users of birth control pills for hyper-coagulability (a predisposition to blood clotting problems); and 4) persons with Blood Type A have a greater risk of blood clotting potential by using birth control pills.[1]

At trial, plaintiff presented two medical experts, Dr. John Hillabrand and Dr. Robert Laird. Both of these experts concluded that Ms. Ash's death was caused by Norlestrin. They also concluded that Ms. Ash had Blood Type A because of her parents' blood types, that she suffered cerebral vascular and pulmonary emboli, and that the clots developed after taking 19 consecutive birth control pills. Their opinions were also based, in part, upon reports in medical journals which indicated that women with Type A blood who also took birth control pills suffered from blood clotting disorders three times as often as women with other blood types under similar circumstances. Both experts concluded that defendant should have warned of these risks.

Dr. Laird also testified that two simple lab tests can be performed to measure the thrombin (blood clotting factor) and anti-thrombin (thrombin inhibitor) levels. He indicated that if these tests had been performed on Ms. Ash before she began using the pill, they probably would have indicated abnor-

[1] We note that defendant may have had a direct duty to warn the decedent. *In re Certified Questions,* 419 Mich 686; 358 NW2d 873 (1984).

mal levels of thrombin or anti-thrombin. The prescribing information provided by defendant for Norlestrin in 1975 did not refer to or recommend such blood testing. Dr. Laird, therefore, was of the opinion that the prescribing information for Norlestrin did not adequately reflect the state of knowledge at the time concerning blood testing for hyper-coagulability.

At the close of plaintiff's proofs, defendant moved for a directed verdict. The trial court denied defendant's motion. Defendant then offered the testimony of Dr. Julian Ambrus. Dr. Ambrus testified that there was only a 50 percent chance that Ms. Ash had Blood Type A. Dr. Ambrus testified that the only way to determine a blood group is to perform a specific laboratory test and that since no blood-type testing was done on decedent, he was unable to determine her blood type. He specifically rejected the articles in the medical journals, which were relied upon by plaintiff's experts, as a basis for determining blood type. Dr. Ambrus also testified that tests recommended by Dr. Laird would not identify women who are hyper-coagulable before they begin taking oral contraceptives. While Dr. Ambrus found that certain hemotalogic workups would be useful, he also noted that they would be so expensive that they would not be practical to administer to every woman taking birth control pills.

Dr. Ambrus testified that he had two possible theories as to the cause of Ms. Ash's death: 1) that she suffered an arythmia or irregular heart beat, which allowed for the formation of blood clots which then travelled to the brain and lungs; or 2) a blood vessel burst in her brain.

Defendant then presented a neurologist who supported Dr. Ambrus's theory that blood clots were formed by an irregular heart beat. On rebut-

tal, plaintiff presented the testimony of a thoracic cardiovascular surgeon who examined a tissue slice from decedent's heart and found no evidence of a virus, inflammation, or any other heart disease which would have caused decedent's heart to beat irregularly.

The jury returned a verdict in favor of plaintiff and awarded damages in the amount of $2,275,000. Defendant then filed a motion for a new trial or in the alternative for judgment notwithstanding the verdict, making the same allegations of error that it now makes on appeal. The trial court denied defendant's motion. Defendant then appealed as of right to this Court.

On appeal, defendant claims that it cannot be held liable for decedent's death because of several defects in plaintiff's case. The essence of these claims is that plaintiff has failed to make a prima facie case of negligence and therefore the trial court improperly denied defendant's motion for a new trial or, in the alternative, judgment notwithstanding the verdict.

It is within the trial court's sound discretion to grant or deny a motion for new trial. *Wigginton v City of Lansing,* 129 Mich App 53, 60; 341 NW2d 228 (1983), *lv den* 419 Mich 880 (1984). The standard of review is whether the jury's verdict was against the overwhelming weight of evidence. *Wigginton, supra,* citing *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608, 623; 310 NW2d 15 (1981), *lv den* 413 Mich 874 (1982). A reviewing court affords deference to the trial judge's decision since the trial judge, having heard the witnesses, is uniquely qualified to judge the jury's assessment of their credibility. *Drouillard, supra.* This Court will not substitute its judgment for that of the jury unless a review of the record reveals a miscarriage

of justice. *Broth v DeGrandchamp,* 71 Mich App 439, 446; 248 NW2d 576 (1976).

In reviewing a trial court's refusal to grant a motion for directed verdict or judgment notwithstanding the verdict, we must view the evidence in a light most favorable to plaintiff to determine whether plaintiff has established a prima facie case of negligence. *Caldwell v Fox,* 394 Mich 401, 407; 231 NW2d 46 (1975); *Taylor v Wyeth Laboratories, Inc,* 139 Mich App 389; 362 NW2d 293 (1984). To establish a prima facie case of negligence, plaintiff must prove the existence of a legal duty which defendant owes to plaintiff, that defendant failed to exercise ordinary care in performing this duty, and that plaintiff suffered damages proximately resulting from defendant's negligence. *Clark v Dalman,* 379 Mich 251; 150 NW2d 755 (1967); *Muilenberg v The Upjohn Co,* 115 Mich App 316, 330; 320 NW2d 358 (1982). A plaintiff must present proof on each of these four elements to establish a prima facie case. *Beals v Walker,* 98 Mich App 214; 296 NW2d 828 (1980), *rev'd on other grounds,* 416 Mich 469; 331 NW2d 700 (1982). The case should be removed from the jury's consideration only if the evidence demonstrates with the utmost clarity that plaintiff failed to present sufficient proofs on these elements. *Krugh v Miehle Co,* 503 F2d 121 (CA 6, 1974).

Plaintiff's theory of negligence is premised on defendant's warning regarding the use of Norlestrin. In *Dunn v Lederle Laboratories,* 121 Mich App 73, 78-80; 328 NW2d 576 (1982), this Court stated the law applicable to such a claim:

"Unavoidably unsafe products must be properly marketed with adequate warnings of their dangers. See *Calabrese v Trenton State College,* 162 NJ Super 145; 392 A2d 600, 604 (1978), *aff'd* 82 NJ 321; 413 A2d 315 (1980) (rabies vaccine).

* * *

"The manufacturer must adequately warn of dangers it knows or had reason to know of. 2 Restatement Torts, 2d, § 388, pp 300-301. In this respect, the manufacturer is held to the knowledge of an expert and is presumed to know of scientific studies and articles concerning the safety of its products. *Borel v Fibreboard Paper Products Corp,* 493 F2d 1076, 1089 (CA 5, 1973), *cert den* 419 US 869; 95 S Ct 127; 42 L Ed 2d 107 (1974); *Krug v Sterling Drug, Inc,* 416 SW2d 143, 149 (Mo, 1967). Taking this knowledge into consideration, the adequacy of a warning is an issue of reasonableness. *Smith v E R Squibb & Sons* [405 Mich 79; 273 NW2d 476 (1979)], *supra,* 90. Reasonableness is a question of fact."

In the instant case, plaintiff presented testimony to support the claim that the warnings provided by defendant in 1975 regarding the use of Norlestrin were inadequate and unreasonable. Plaintiff's experts testified that in 1975 defendant should have been explicitly warning of the correlation between higher doses of estrogen and increased risks of blood clotting disorders. These experts pointed out that this information was first published in medical journals in 1968 and that, as a result of this information, birth control pills with lower dosages of estrogen, such as Loestrin, which is manufactured by defendant, were placed on the market.

This testimony stands basically uncontroverted. Defendant's expert responded by testifying that Norlestrin already contained a low dosage of estrogen. This statement does not, however, dispute plaintiff's claim that defendant should have warned that a lower dosage of estrogen, such as can be found in Loestrin, should have been recommended to women who are more susceptible to blood clotting disorders. Considering this testimony, the jury was properly allowed to determine

whether defendant had a duty to give this warning.

Plaintiff also presented expert testimony indicating that defendant should have recommended that a doctor ascertain whether there is a family history of strokes before prescribing oral contraceptives. Defendant presented expert testimony indicating that there was no relationship between the use of oral contraceptives and strokes and, therefore, there was no need to ascertain whether the patient's family had a history of strokes. Viewing this evidence in a light most favorable to plaintiff, we find that there was a question of fact upon which reasonable minds could differ.

Plaintiff also presented expert testimony that defendant should have been recommending blood screening tests to detect for hyper-coagulability. Dr. Laird testified that in 1975 two simple lab tests were available to measure the thrombin and anti-thrombin three levels in a patient's blood which would determine a predisposition toward clotting disorders.

Defendant's expert testified that the test recommended by Dr. Laird would not identify women who are hyper-coagulable before taking the pill since he felt that other blood clotting factors would also have to be tested. Defendant's expert testified that the tests he recommended were impractical since they were too expensive and could only be done in a limited number of medical facilities. The question of whether the expense outweighed the risk is precisely the kind of issue which must be decided by the jury. *Taylor, supra*, p 399. The jury was free either to reject or accept this proffered testimony. This issue required the jury to weigh the qualifications of the expert witnesses and the quality of their testimony along with all the other evidence. See *Shapiro v Wendell*

*Packing Co,* 366 Mich 289, 295; 115 NW2d 87 (1962). The jury was properly allowed to determine whether defendant had a duty to recommend the tests suggested by Dr. Laird. *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977).

Plaintiff also presented testimony that defendant should have been warning that women with Blood Type A who took birth control pills had a three-times greater risk of developing blood clotting disorders than similarly situated women with Blood Type O. Plaintiff's expert heavily relied upon an article in a medical journal, Jick, *et al, Venous Thromboembolic Disease and ABO Blood Type, The Lancet,* (March 15, 1969). While defendant presented expert testimony to the effect that the Jick article should not have been relied on since its conclusions were greatly debated, plaintiff presented some evidence that women with Type A blood had an increased risk of developing blood clotting disorders when taking birth control pills and that a warning to this effect would be reasonable. The jury therefore was properly allowed to consider this issue.

Since plaintiff has presented evidence which tended to show that defendant had a duty to make these warnings and breached that duty, plaintiff established the first two elements of a prima facie case of negligence. Defendant's arguments that plaintiff's case was deficient on these elements are without merit.

We next consider whether plaintiff presented sufficient evidence that defendant's breach of its duty to warn was a proximate cause of Ms. Ash's death. In analyzing this issue, we first consider whether plaintiff presented sufficient evidence that Ms. Ash had Type A blood. The record contains no evidence of a blood test to determine Ms. Ash's blood type. Defendant argues that if Ms. Ash did

not have Blood Type A, the failure to warn Dr. Reid of the increased propensity in Type A individuals to develop blood clotting disorders could not have affected Ms. Ash's decision to take Norlestrin, and therefore was not a proximate cause of her death. Plaintiff sought to prove that Ms. Ash had Type A blood based upon evidence that her mother had Type A blood and her father had Type O blood. This evidence only indicates a 50 percent chance that Ms. Ash had Type A blood. Plaintiff's experts, however, testified that the circumstances surrounding Ms. Ash's death created a likelihood that she had Type A blood. Specifically, they considered that Ms. Ash had been in good health and that shortly after she began taking birth control pills she died from a massive blood clot in her brain and had extensive clotting in her lungs. Plaintiff's experts then relied on medical articles which indicated that women with Type A blood who took birth control pills were more prone to develop such blood clotting disorders.

Defendant's expert testified that it is unacceptable to determine a blood type by making these inferences and that he could only reach a conclusion as to Ms. Ash's blood type if the proper laboratory tests had been performed. Defendant maintains this argument on appeal and claims that the lower court erred in admitting plaintiff's experts' testimony.

The trial court relied on *Anderson v Harry's Army Surplus, Inc,* 117 Mich App 601; 324 NW2d 96 (1982), *lv den* 417 Mich 1074 (1983), when allowing plaintiff's experts to testify regarding Ms. Ash's blood type. In *Anderson, supra,* the plaintiff sought to recover from the manufacturer of a camping heater which set his tent on fire while he was sleeping in it. Defendant attempted to show that the plaintiff and his companions were intoxi-

cated and that their intoxication was a contributing cause of the fire by offering testimony that empty beer bottles were found around the tent and that plaintiff and his companions had been smoking marijuana. The trial court excluded this evidence, finding that it was more prejudicial than probative. In reversing the trial court's decision, this Court reasoned that without the evidence:

"[T]he jury was left with a distorted view of the events surrounding the accident. Plaintiff admitted to some consumption of both alcohol and marijuana. Sgt. Willie's testimony by deposition was that there were a lot of empty beer bottles at the campsite. Even though plaintiff denied that he or his companions were intoxicated, there was some admissible evidence to the contrary, and defendants should have been allowed to present it. *The probative value of the evidence was enhanced by the lack of direct evidence as to the cause of the fire. While the admission of the evidence would certainly not be adequate to conclusively prove comparative negligence, it may have made the jury less likely to conclude that a defect in the heater was the sole cause of the fire. As factfinders, and in the absence of any eyewitness, the jurors were required to speculate.* Defendants' position was seriously prejudiced by the exclusion of the evidence in question." 117 Mich App at 609. (Emphasis added.)

In the instant case, the trial court reasoned that without evidence of decedent's blood type, an incomplete picture of the potential cause of decedent's death would be presented to the jury, and plaintiff's case would be severely prejudiced. Further, since there was no direct evidence of decedent's blood type, the probative value of the circumstantial evidence was enhanced. This analysis is in accordance with *Anderson, supra.*

Defendant attempts to distinguish *Anderson* by arguing that, in the instant case, plaintiff pre-

sented no tangible evidence from which the jury could infer that Ms. Ash had Type A blood. Specifically, defendant claims that Dr. Jick's article which was relied upon by plaintiff's experts in reaching their conclusion was not tangible evidence like the beer bottles in *Anderson.* While in the instant case plaintiff did not have such tangible evidence, he offered the testimony of two experts which indicated that Dr. Jick's article was reliable. The trial court did not abuse its discretion in allowing plaintiff's experts to testify in this matter. MRE 702. This testimony tended to show that it was more probable than not that Ms. Ash had Blood Type A, satisfying the threshold requirement of relevancy for admissibility. MRE 401. Considering the complexity of the Jick article, the trial court could properly conclude that the testing and results it contained were subject to interpretation by experts in the field of medicine.

Defendant also claims that plaintiff did not present a sufficient foundation to allow Dr. Laird and Dr. Hillabrand to testify as to Ms. Ash's blood type. All of the cases defendant cites consider the requirements for admitting the findings of a blood test. *E.g., Moerman v Kalamazoo County Road Comm,* 129 Mich App 584, 593-594; 341 NW2d 829 (1983). Defendant also relies on *Bauer v Veith,* 374 Mich 1; 130 NW2d 897 (1964), in which the Supreme Court held that the results of a blood test for alcohol content were improperly admitted since the lab technician who took the test did not testify. These cases are distinguishable since evidence of a blood test was not admitted in this case. Also, the absence of a blood test in a dramshop action does not preclude recovery since circumstantial evidence and permissible inferences drawn therefrom are sufficient to establish a prima facie case. *Lasky v Baker,* 126 Mich App 524, 529; 337 NW2d

561 (1983). Likewise, the fact that a blood test was not performed in the instant case does not preclude plaintiff from using circumstantial evidence to show the decedent's blood type.

Defendant next argues that its failure to provide more detailed warnings cannot be a proximate cause of decedent's death since Dr. Reid's decision to prescribe Norlestrin to decedent was a proper one and that Dr. Reid had knowledge of those matters which plaintiff alleged should have been included in defendant's prescribing information. To establish the element of causation, plaintiff must show that an adequate warning would have prevented decedent's injury by altering the doctor's conduct or that the physician might have heeded an adequate warning. *Dunn, supra,* p 87, citing *Stanback v Parke, Davis & Co,* 657 F2d 642, 645 (CA 4, 1981).

In the instant case, the prescribing physician, Dr. Reid, indicated on numerous occasions that he would have acted differently if defendant had given the warnings proposed by plaintiff. For instance, the doctor indicated that he would have "undoubtedly" warned decedent that persons with Blood Type A have at least a three times greater risk of developing blood clots than persons with Type O blood if defendant had made this risk known to him in 1975. He also indicated that had defendant made known to him the greater risk of developing blood clots by the use of higher estrogen content oral contraceptives, this might have been a significant factor in evaluating the risk of using oral contraceptives in 1975. Although Dr. Reid indicated that he was exposed to this information through other sources not provided by defendant, this testimony was sufficient to allow the jury to decide that Dr. Reid would have altered his conduct concerning the prescribing of

Norlestrin to decedent if defendant had provided adequate warnings. The fact that Dr. Reid independently warned the decedent about some of the risks involved in taking oral contraceptives does not, as a matter of law, prevent defendant's failure to warn from being a proximate cause of the decedent's death. As stated in *Taylor, supra,* pp 401-402:

" 'The proximate cause of an injury has been defined as that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, without which such injury would not have occurred.'[24] An act of negligence does not cease to be a proximate cause of the injury because of an intervening act of negligence, if the prior negligence is still operating and the injury is not different in kind from that which would have resulted from the prior act.[25] The courts of this state have held that whether an intervening negligent act of a third person constitutes a superseding proximate cause is a question for the jury.[26] An intervening cause is not an absolute bar to liability if the intervening event is foreseeable, though negligent or even criminal.[27]

[24] *Weissert v City of Escanaba,* 298 Mich 443, 452; 299 NW2d 139 (1941); *Hall v Dep't of State Highways,* 109 Mich App 592, 603; 311 NW2d 813 (1981).

[25] *Parks v Starks,* 342 Mich 443, 447; 70 NW2d 805 (1955); *Michigan Sugar Co v Employers Mutual Liability Ins Co of Wisconsin,* 107 Mich App 9, 15; 308 NW2d 684 (1981).

[26] *Young [v E W Bliss Co], supra* [130 Mich App 363, 369; 343 NW2d 553 (1983)].

[27] *Davis v Lhim,* 124 Mich App 291, 307; 335 NW2d 481 (1983)."

Defendant has failed to show that an intervening negligent act of a third person constitutes a superseding proximate cause. In any event, this would be a question for the jury.

We next consider whether the trial court erred in excluding evidence that the Food and Drug Administration would not have permitted the warning that individuals with Type A blood have a

greater risk of incurring blood clotting disorders than individuals with Type O blood. The evidence defendant sought to admit at trial concerned an attempt by two drug companies to receive permission from the FDA to amend its labeling in the Physician's Desk Reference to include a warning that patients with Blood Types A, B, or AB have an increased risk of suffering from thromboembolic diseases. Defendant sought the admission of a letter dated February 27, 1979, from the FDA to Syntex Laboratories in which the FDA requested deletion of a proposed warning on the basis that "the evidence in support of this was not considered sufficient to warrant its inclusion in the labeling". The FDA further requested that Syntex provide additional data to support the inclusion of the warning statement. In response, Syntex submitted three articles, one of which was the 1969 Jick article upon which Drs. Laird and Hillabrand partially relied in formulating their opinions that decedent had Type A blood. After reviewing the submitted articles, the FDA again demanded that Syntex delete the proposed warning. Defendant also wished to present some testimony by Dr. Laird on the FDA's actions.

The lower court initially ruled that defendant would be allowed to present this evidence but cautioned that defendant would have to lay a proper foundation for its admissibility. Defendant was not given an opportunity to offer this foundation because the court subsequently ruled it could not be admitted, finding that the evidence was more confusing than probative under MRE 403:

"*The Court:* All right. That's the first time that the regulation has been—or the ruling has been read to me. And having heard it, I would have thirty questions to start about what each one of those words means.

"And aside from Mr. Bleakley's position, I would have great problems submitting that kind of a ruling to the jury, and asking them to evaluate it, because they don't have all the regulations in front of them, the instruction booklet or whatever the labeling materials are, and they don't know what the thinking of the FDA is.

"So all I get from that ruling is the bottom line: If you don't comply by submitting extra materials, disciplinary action will be taken. We don't know what materials were submitted. We don't know what more are required. There is just too much that is unknown to me and then to the jury by the simple admission of that ruling. And I am concerned that it will be far more confusing than probative.

"And I don't want to try another lawsuit and get into all those questions because it's just not relevant to the issues here."

The admissibility of evidence lies within the discretion of the trial court and the court's decision will not be reversed on appeal unless there has been an abuse of discretion. *Young v E W Bliss Co,* 130 Mich App 363, 370; 343 NW2d 553 (1983). Defendant argues that the trial court abused its discretion since it allowed plaintiff to submit opinion testimony regarding the decedent's blood type while disallowing defendant to present this testimony regarding the FDA's actions concerning another drug company's attempt to modify its labeling. The lower court's decision to allow plaintiff to present expert testimony regarding the decedent's blood type is entirely unrelated to the instant evidentiary issue. To the extent that defendant's argument is a veiled claim that the lower court was biased, we note that defendant has failed to properly preserve this issue for appeal. We therefore consider the lower court's decision to deny the admission of this evidence to be in accordance with the rules of evidence as recognized in Michigan.

We find that the lower court did not abuse its discretion. The difficulty with this evidence lay within its hearsay nature and the lack of foundation that can clarify its relevance to the instant case. The trial court correctly found that this evidence would be unduly confusing. The evidence dealt with proposals submitted to the FDA in 1979. The instant lawsuit deals with warnings which allegedly should have been given in 1975. Thus the jury would have to compare the FDA regulations as they existed in 1979 and 1975. The FDA's letter also fails to state that it heavily relied on the Ob-Gyn advisory committee report of 1969 instead of the three reports submitted by Syntex. The FDA's summary rejection of Syntex's request to supplement its warning, which was supported by recognized medical studies, has very little weight because the FDA did not state its reasons for doing so. Without further evidence, the jury could have improperly speculated on the FDA's reasoning. Even if defendant could have overcome these problems by presenting clear evidence as to the FDA's action, defendant would still have to overcome the hearsay problem. See *Lindsay v Ortho Pharmaceutical Corp,* 637 F2d 87, 94 (CA 2, 1980).

Defendant next argues that it was denied a fair trial by a deliberate and calculated attempt by plaintiff's attorney to create prejudice, bias and sympathy during closing argument. An attorney's misconduct during closing argument is grounds for reversal if it may have caused the result or played too large a part and may have denied a party a fair trial. *Reetz v Kinsman Marine Transit Co,* 416 Mich 97, 103; 330 NW2d 638 (1982); *Argenta v Shahan,* 135 Mich App 477, 482; 354 NW2d 796 (1984). The record must show that a course of misconduct was so persistently followed that a

charge of the court in an effort to obviate the prejudice would have been useless, *Reetz, supra,* p 112; *Argenta, supra,* pp 482-483.

Plaintiff's attorney argued that he presented the decedent's mother's testimony knowing that she would cry because the jury would "have to feel some of the suffering of this family". This was not a violation of the "golden rule" as defendant claims since plaintiff's counsel wasn't asking the jury to assess damages upon the basis of an amount they would be willing to accept for the wrongs alleged to have been suffered. *Anderson v Harry's Army Surplus, Inc, supra,* p 616. Plaintiff's counsel was merely explaining why he had to place the decedent's mother in an uncomfortable situation.

Defendant also claims that plaintiff's counsel violated the "golden rule" by arguing that major corporations pay large sums of money to advertise on television and then asking the jury how much it would cost to pay a person to experience what the decedent experienced the last 20 hours of her life. Defendant objected arguing that there was no evidence that Parke Davis advertised on television. The court responded by stating that it was up to the jury to analyze the logic of the argument but reminded the jury that they were still bound by the evidence and that they were not there to punish the defendant. Defendant now argues that this argument is "simply a variation of the question of what each juror would accept to undergo what the decedent suffered". Considering the specificity of defendant's objection at trial, we feel that the lower court's statement to the jury sufficiently cured any error which may have been caused by plaintiff's counsel's statement. Plaintiff's counsel's statement was phrased in general terms

and did not specifically appeal to the passion of the jury.

Defendant also claims that plaintiff's counsel erred in stating several times that it was not the jury's function to punish defendant. Defendant claims that by repeating that the jury was not to punish the defendant, plaintiff's counsel really meant to tell the jury that they were to punish defendant. The record however fails to disclose that this repetition on the punishment theme worked to convey the opposite meaning. Any misconception by the jurors concerning the basis for assessing damages was dispelled by the trial court's instructions.

Defendant finally claims that plaintiff's counsel's remark that Parke Davis did not present the testimony of any of its employees or officers was error. Defense counsel objected to this statement and plaintiff's counsel withdrew the remark and proceeded with a different argument. Plaintiff's counsel later explained that he was merely trying to argue that the jury should not consider defense counsel's argument as evidence or testimony on behalf of Parke Davis as a witness. The trial court responded that any problem was corrected by its instruction that the attorney's remarks are not evidence. We agree. In any event:

"[I]t is legitimate to point out that an opposing party failed to produce evidence that it might have, and consequently the jury may draw an inference against the opposing party. This is permissible even though the same witnesses could have been produced by both parties." *Reetz, supra,* p 109.

When viewed as a whole, plaintiff's argument was proper and any prejudice which may have occurred was cured by the court's instruction.

Affirmed.